A. J. WHITMER ET AL & H. G BIDWELL *v.* FELIX NALL'S EXR. ET AL.

**Judgments—Voidable only—Not Available to Sureties on Bond.**

A judgment rendered against minors, in a suit by an administrator to settle the estate of an intestate, is voidable only, and not void, by reason of the failure of the infants to answer by guardian ad litem and if prejudicial to them, they may reverse it, but is valid and binding until reversed.

**Same.**

Sureties on a bond, executed for the payment of property, sold under such judgment, cannot be heard to complain of its regularity as to the service upon the minors or their answer by Guardian ad Litem.

APPEAL FROM MUHLENBURG CIRCUIT COURT.

May 23, 1868.

OPINION OF THE COURT BY JUDGE PETERS:

In June, 1857, Felix Nall made and published his last will, and died in February, 1864. In a short time after his death the will was probated, and William P. Nicholls, a son-in-law of testator, and the executor named in the will, qualified as such. Mrs. Mary G. Nall, the widow, renounced the provision made for her, by her husband in his will, and claimed dower in the estate. About the 22d of August, 1864, the executor filed his petition in equity in the Muhlenberg circuit court and in the county of the residence of testator at his death, against his widow, devisees and heirs, some of whom were infants, asking the chancellor to construe the will, to direct him in the execution thereof, and to settle the rights of the parties—alleges that the testator, after the publication of his will, acquired two slaves, Mariah and Kate, and owned a man Mart at the time of its publication, and owned them all at his death, that they could not be divided in kind, and prayed for a sale of the slaves.

After giving construction to the will, and settling the rights of the parties, the court decreed a sale of the slaves, appointed his master commissioner to execute the judgment, prescribing the manner the slaves were to be sold and terms of sale. The master at the November term, 1865, of the court, reported the sale, which was confirmed without exception, and from which it appears that he made the sale on the 10th of November, 1865, on a credit of six months, and that appellant Whitmer bought the man Martin at the price of $225, and executed his bond with J. Kittinger as his surety. That H. G. Bidwell purchased one of the women, and her child, at the price of $151, and executed bond and surety. The other woman sold for $50, but as there is no controversy about her, nothing further need be said of her sale.

Early in 1866, before their bonds matured, Whitmer and Bidwell filed their separate petitions in the Muhlenberg circuit court, to enjoin the collection of said bonds, and to have them cancelled, their actions were consolidated, and on a final hearing the court below dissolved their injunctions and dismissed their petitions, and from that judgment they have appealed.

In the very elaborate brief of the counsel for appellants two grounds are relied upon for reversal.

1st, that a judgment for the sale of slaves was rendered in an

action brought by Nall's executor vs. Nall's devisees, etc., to have
the will construed, that the court had no jurisdiction to render
judgment to sell the slaves in that action, and that the proceedings,
if the court had jurisdiction, were irregular, did not conform to
the provisions of *Chap.* 86 of *R. S.,* regulating the proceedings for
the sale of slaves, if infants, and that the judgment was void.

2nd. That the consideration for which the bonds were executed
had wholly failed.

As to the first objection, it is true, the action in which the judg-
ment for the sale of slaves was rendered stands in the name of
"William P. Nicholls, executor of the last will and testament of
Felix Nall, deceased, vs. Mary G. Nall, widow, etc." But it
appears in the pleadings, and exhibits, that he was the son-in-law
of testator, his wife was living and a party to the action, the sum-
mons was served on all the infant defendants, all the adult defend-
ants answer, admit the facts alleged in the petition, join in the
prayer for a construction of the will, and for distribution and
partition of the estate, as directed by the will. And the statutory
guardians of the infants answer and join in the prayer for a full,
final and equitable division and distribution of the estate.

It is perfectly certain that a division in kind of the slaves could
not be made, they were held jointly by the parties, to the action,
except the slave Martin, whom the testator directed to be sold
after the expiration of 5 years, and of course, his executor had
authority to sell him without the aid of a court of equity. The
others did not pass by the will, but passed by the law of descent
to the testator's heirs, he dying as to them, intestate, and under
Art. 11, Chap. 86, 2 R. S. 303-4, any one or more of the parties
interested could petition a court of equity to make the sale, and
the court will decree a sale and distribution of the proceeds. The
proceedings under which the slaves were sold were doubtless under
the statue herein referred to, and in the prayer for a sale, the
infants, by their guardian, joined and for that purpose and to
that extent were plaintiffs.

But even if they are to be treated as defendants to the action,
and they did not answer by *guardian ad litem,* the judgment ren-
dered against them is not void, but *voidable* only, and if prejudicial
to them they may reverse it, but it is valid and binding until
*reversed.*. Porter's heirs vs. Robinson, 3 Mar., 254; Allison vs.
Taylor, 6 Dana. 878.

In the decree for a sale of the slaves, therefore, no error is perceived which can avail the appellants.

At the date of the sale, the adoption of the amendment to the Constitution of the United States was not only most probable, but was regarded generally as an event certain to take place within a short period, whereby the slaves in the United States would be emancipated. None could buy slaves then in ignorance of the precarious tenure by which such property was held, indeed there was no intrinsic or real value in slave property, and none could buy such property with the hope that there was any more than a contingent, speculative value in it. But even if there was no value *per se* in the slaves that fact did not destroy the legal obligation of the bonds given by appellants. They took the slaves as the sellers held them, there is no implied warranty of value. The prospect of value though remote, and of gain was the consideration, and a sufficient legal consideration to uphold the bonds, unless there was a fraudulent misrepresentation or concealment in the sale, of which there is no allegation or proof in this case. Lightburn vs. Cooper, 1 Dana, 273.

Nor can the failure of appellees to deliver to appellants the negroes at the expiration of the term of their hire change the case even if there was any proof that they were to deliver possession then, the title passed by the confirmation of the commissioner's report of the sale, and vested in them, they then held them subject to all casualties that befell such property as other owners.

Judgment affirmed.

*Hay & Thompson, for appellant.*